**PAHL & McCAY**
A Professional Law Corporation
**Sarahann Shapiro, Esq.** (State Bar No. 157122)
**Eric J. Stephenson, Esq.** (State Bar No. 282305)
225 West Santa Clara Street
Suite 1500
San Jose, California 95113-1752
Telephone: (408) 286-5100
Facsimile: (408) 286-5722
Email: sshapiro@pahl-mccay.com
        estephenson@pahl-mccay.com

Attorneys for Defendants JOSEPH P. MELEHAN,
and MAUREEN MELEHAN MACHADO

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

|  |  |
|---|---|
| SCOTT JOHNSON,<br><br>            Plaintiff<br><br>v.<br><br>JOSEPH P. MELEHAN, Trustee of the Patricia Melehan Trust; MAUREEN MELEHAN MACHADO, Trustee of the Patricia Melehan Trust; and DOES 1-10, inclusive,<br><br>            Defendants | Case No.  5:16-cv-04064-HRL<br><br>**DECLARATION OF JERRED O'CONNELL IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**<br><br>Date:  August 22, 2017<br>Time:  10:00 a.m.<br>Dept.: Courtroom 2, 5th Fl.<br>Judge: Hon. Howard R. Lloyd<br><br>Action Filed: July 19, 2016<br>Trial Date: TBA |

I, Jerred O'Connell, declare as follows:

1.      I am the authorized property management agent for Defendants, the owners of the premises described below.  My business address is c/o Pepper Tree Estates, 2150 Monterey Rd., San Jose, California 95112.

2.      As the authorized property management agent, I am familiar with the current condition of the premises described below.  If called as a witness, I could of my own personal knowledge testify competently to the following.

3.      After receipt of the Complaint, I authorized my attorney to hire a Certified Access

Pahl & McCay
A Professional Corp
225 W. Santa Clara
Suite 1500
San Jose, CA 95113
(408) 286-5100

*2537/011 -
00553211.DOCX
1

Specialist ("CASp") to perform an inspection of the parking lot of the shopping center located at 1224-1228 South Bascom Avenue in San Jose, California (the "Shopping Center"), in order to determine whether any of the access barriers alleged in Plaintiff's Complaint actually existed.

4.      According to the CASp inspection report, none of the seven (7) access barriers alleged in Plaintiff's Complaint actually exist at the Shopping Center.  A true and correct copy of the CASp inspection report is attached hereto as Exhibit A.

5.      I am unable to determine whether the access barriers alleged in Plaintiff's Complaint existed at the Shopping Center in 2015, and I have no documentation as to the condition of the Shopping Center at that time nor any way now to collect evidence as to the Shopping Center's condition in 2015.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.  Executed on June 23, 2017, at San Jose, California.

Jerred O'Connell

Pahl & McCay
A Professional Corp.
225 W. Santa Clara
Suite 1500
San Jose, CA 95113
(408) 286-5100

*2537-011 -
00553211.DOCX
1

DECLARATION OF JERRED O'CONNELL IN SUPPORT OF MOTION ...      (Case No. 5:16-cv-04064-HRL)



Kim R. Blackseth, Interests, Inc.
1040 Main Street, Suite 105
Napa, CA 94559

Phone 707-255-5576

June 14, 2017

Sarahann Shapiro
Pahl & McCay
225 West Santa Clara, Suite 1500
San Jose, CA 95113

Email : sshapiro@pahl-mccay.com

**RE: Johnson v. Melehan – 1224 – 1228 S. Bascom Ave, San Jose CA.
        Response to Complaint**

Dear Ms. Shapiro:

At your request, we reviewed the Complaint filed by the Center for Disability Access on the subject property in San Jose, CA. We performed a site inspection on May 30, 2017. To accurately evaluate Plaintiff's allegations and the proper state and federal access standards to be used, a review of the sites building alteration history should be assessed. The Complaint does not review the alteration history.

**California Building Code**

The first California access laws for newly constructed buildings (Health and Safety Code 19955) were passed in 1969. In 1971, Health and Safety Code 19959 was passed that required all alterations, repairs and additions be accessible in public accommodations.

In 1982, the California Building Code Title 24 (CBC Title 24) went into effect replacing the 1961 ANSI standards. The CBC Title 24 accessibility standards were revised in 1984, 1986, 1987, 1989, 1994, 1996, 1998, 2001, 2007, 2010 and 2013. The current 2016 CBC became effective January 1st, 2017.

This facilities obligation to comply with the California Building Code (CBC) depends largely on its construction date and alteration history. If an alteration (as defined in the CBC) is performed, these facilities have to comply with the edition of the CBC in effect on the date of their last alteration.

This obligation would include the functional area renovated, the path of travel to them and the sanitary facilities that support them, not the entire facility. If an alteration is performed, the date of those renovations reveals the applicable editions of the State Building Code that will determine what additional access features are required.

EXHIBIT /A

**The Americans with Disabilities Act**

The ADA was signed into law on July 26, 1990 and revised in 2010 (effective March 12, 2012).  It contains requirements for new construction, for alterations or renovations to buildings and facilities, and for improving access to existing facilities of private companies providing goods or services to the public and requires reasonable modifications of policies and practices that may be discriminatory

The ADAAG and 2010 ADA Standards were developed for New Construction and Alterations. Existing facilities not otherwise being altered are subject to requirements specified in the DOJ regulations.  Title III entities must pursue barrier removal – or alternatives – in existing places of public accommodation. Broadly viewed, ADA implementing regulations outline a hierarchy of obligations:

- New construction must be fully accessible, in compliance with applicable provisions of the ADA;

- Alterations must observe new construction criteria where technically feasible; less stringent technical specifications may be applied where technical unfeasibility is encountered; alterations to primary function areas carry an additional obligation to improve the path of travel to the altered area;

- Existing Public Accommodation facilities must achieve a level of usability that balances user needs, the constraints of existing conditions, and the resources available for remedial work. If you are a "Commercial Facility", you are not subject to barrier removal.

- Commercial facilities, which are not public accommodations, such as office buildings, factories and warehouses are not subject to barrier removal. However, they must comply with the ADA architectural standards for new construction and alterations when built or altered.

**Readily Achievable Barrier Removal**

As in the 1991 Standards, the 2010 Standards requires removal of architectural barriers in existing Public Accommodations, when it is "readily achievable" to do so. Readily achievable means "easily accomplishable without much difficulty or expense."

This requirement is partly based on the size and resources of an entity. So, entities with more resources are expected to remove more barriers than

facilities with fewer resources.
Readily achievable barrier removal may include providing an accessible route from a parking lot to the entrance, installing an entrance ramp, widening a doorway, installing accessible door hardware, repositioning shelves, or moving tables, chairs, display racks, vending machines, or other furniture.

When removing barriers, facilities are required to comply with the 2010 Standards to the extent possible. For example, where there is not enough space to install a ramp with a slope that complies with the Standards, a business may install a ramp with a slightly steeper slope. However, any deviation from the Standards must not pose a significant safety risk.

### What Contributes to the Determination of "Readily Achievable"?

I. Nature and cost of the action
II. Overall financial resources of the local site
III. Number of persons employed
IV. Effect on expenses and resources
V. Legitimate safety requirements that are necessary for safe operation
VI. Impact otherwise on the operation of the site
VII. Fundamental alteration of the programs, services, benefits, activities, goods, etc.
VIII. Other barriers being removed
IX. Relationship to the parent company
   A. Geographic separateness
   B. Administrative or fiscal relationship of site to parent company
   C. If applicable:
      1. Overall financial resources and assets
      2. Parent companys budget
      3. Size of parent company in number of employees
      4. Number, type and location of other facilities
      5. Type of operations of parent company
      6. Composition, structure and functions of workforce
X. Significant loss of selling or serving space
XI. Never exceeds the new construction requirements

**The Department's regulation contains a list of 21 examples of modifications that may be readily achievable. These are not all inclusive, but are illustrative of the DOJ's intent:**

1) Installing ramps;
2) Making curb cuts in sidewalks and entrances;
3) Repositioning shelves;
4) Rearranging tables, chairs, vending machines, display racks, and other furniture;
5) Repositioning telephones;
6) Adding raised markings on elevator control buttons;

3

7) Installing flashing alarm lights;
8) Widening doors;
9) Installing offset hinges to widen doorways;
10) Eliminating a turnstile or providing an alternative accessible path;
11) Installing accessible door hardware;
12) Installing grab bars in toilet stalls;
13) Rearranging toilet partitions to increase maneuvering space;
14) Insulating lavatory pipes under sinks to prevent burns;
15) Installing a raised toilet seat;
16) Installing a full-length bathroom mirror;
17) Repositioning the paper towel dispenser in a bathroom;
18) Creating designated accessible parking spaces;
19) Installing an accessible paper cup dispenser at an existing inaccessible water fountain;
20) Removing high pile, low density carpeting; or
21) Installing vehicle hand controls.

**New Construction and Alterations**

The ADA requires that all new facilities built by public accommodations, including small businesses, must be accessible to and usable by people with disabilities. The 2010 Standards lay out accessibility design requirements for newly constructed and altered public accommodations and commercial facilities. Certain dates in the construction process determine which ADA standards—the 1991 Standards or the 2010 Standards—must be used.

**Alterations (ADA)**

When a small business undertakes an alteration to any of its facilities, it must, to the maximum extent feasible, make the alteration accessible. An alteration is defined as remodeling, renovating, rehabilitating, reconstructing, changing or rearranging structural parts or elements, changing or rearranging plan configuration of walls and full-height partitions, or making other changes that affect (or could affect) the usability of the facility.

**Construction/Alteration History**

To firmly establish which editions of the CBC (and to confirm ADAAG requirements) the building history should be researched with the local enforcing agency.

The current CBC and 2010 ABA/ADA readily achievable requirements were used as the baseline for determining if technical deviations are present and then reviewed for barrier status.  If subsequent permit history reveals alterations have taken place, the report conclusions may need to be re-visited.

4

The scope of this report is limited to the issues in the Complaint dated 07/19/16.  Our comments include the following:



**Page 4 item 25** – It is alleged there was no van accessible parking space at the shopping center.

**Response:** We disagree.  The accessible parking space on the left is van accessible and is signed as such.  The access aisle is 8′ wide.  *No action required;*



*Fig 1.1*

5

**Page 4 item 27** – It is alleged the standard disabled space measured less than 216 inches in length.

**Response:** We disagree.  The accessible parking spaces and access aisle are 18' long (Fig 1.2).  ***No action required;***



*Fig 1.2*

**Page 4 item 28** – It is alleged the standard disabled parking space did not have the required "Minimum Fine $250" signage.

**Response:** We disagree.  The accessible parking spaces provide the required "Minimum Fine $250" signage for each accessible space (Fig 1.3).  ***No action required;***



*Fig 1.3*

**Page 4 item 29** – It is alleged the standard disabled parking space did not have the required tow-away signage.

**Response:** We disagree. The required tow sign is provided and visible from the accessible parking spaces. The blank spaces are filled in. *No action required;*



*Fig 1.4*

**Page 4 item 30** – It is alleged the standard disabled space did not have the required adjacent access aisle.

**Response:** We disagree. The accessible parking spaces share an 8' wide access aisle (Fig 1.1 above). *No action required;*

**Page 4 item 31** – It is alleged the standard disabled space was not located closest to the accessible entrance it served.

**Response:** The accessible parking spaces serve multiple storefronts at the facility. It is located on an accessible route to the pedestrian entrances, as required in CBC Section 11B-208.3.1 below. *No further action required;*

***11B-208.3.1 General.*** *Parking spaces complying with Section 11B-502 that serve a particular building or facility shall be located on the shortest accessible route from parking to an entrance complying with Section 11B-206.4. Where parking serves more than one accessible entrance, parking spaces complying with Section 11B-502 shall be dispersed and located on the shortest accessible route to the accessible entrances.* <u>***In parking facilities that do not serve a particular building or facility, parking spaces complying with Section 11B-502 shall be located on the shortest accessible route to an accessible pedestrian entrance of the parking facility.***</u>

**This concludes our comments on Plaintiffs allegations.**

**Report Limitations**

This report is limited to the areas addressed and was created to provide our best opinion on the required state and federal access requirements for this property. It does not identify every possible de mini mus violation, but focuses on the access barriers alleged and to alert you as to the general requirements of the CBC and ADAAG.

This report does not (and can not) indemnify you from every possible interpretation of these codes or any future access lawsuit brought by a party that disagrees with these opinions or is just wrong in their allegations.

This report is not intended to be an exhaustive or perfect analysis, nor can it be thoroughly conclusive. Accessibility compliance is far from empirical and interpreting the intent and meanings of the regulations can be ambiguous. The meaning of terms such as "readily achievable", "undue burden", "structurally impractable" and "reasonable accommodation" can be a challenging exercise and results in a spectrum of interpretations by the courts, other experts, juries, plaintiff's and defendants, as well as building officials.

This document does not provide an interpretation of legal rights or responsibilities. This report does not warrant, guarantee, or represent compliance with all accessibility standards or any legal standing that arises with or occurs subsequent to these services and work product.

However, we are confident that this report does provide the information, that when implemented, will bring you into substantial compliance with the applicable codes and requirements and provide significant protection against future access problems.

Yours truly,

Kim R. Blackseth, ICC, CASp

*State of California Certified Access Specialist (CASp #021)*
*State of California Building Standards Commissioner (2006-2007)*
*California Board for Professional Engineer and Land Surveyors (2007)*
*International Conference of Building Officials # 1085694-12*
*ICC Certified Accessibility Inspector/Plans Examiner #20112*
*Member of the Western Region Master Builders Association*
*California General Building Contractor # 363311, since 1978*